52 N.J. Super. 279 (1958)
145 A.2d 477
MICHAEL V. CRECCA AND MAFALDA CRECCA, HIS WIFE, FRANK J. DeVITA AND DOROTHY E. DeVITA, HIS WIFE, AND PHILIP J. RICCA, PLAINTIFFS-RESPONDENTS,
v.
JAMES NUCERA, BUILDING INSPECTOR OF THE TOWNSHIP OF LYNDHURST, COUNTY OF BERGEN, STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1958.
Decided October 28, 1958.
*281 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Fred G. Stickel III argued the cause for defendant-appellant (Messrs. Stickel and Stickel, attorneys).
Mr. James A. Breslin argued the cause for plaintiffs-respondents.
*282 The opinion of the court was delivered by FREUND, J.A.D.
The question for determination is at what point in time, whether before or after the issuance of a building permit, and under what circumstances does a property owner secure an indefeasibly vested right protecting him for a subsequent, assumedly valid ordinance change which will inhibit or prohibit a use of his property?
Plaintiffs by their complaint in lieu of prerogative writs seek to compel the defendant building inspector to issue a permit authorizing plaintiffs to construct a building to be used for a bowling alley. After summary hearing, on affidavits, the trial judge entered judgment that the defendant issue the applied-for permit. The defendant appeals.
The parties have agreed to a statement in lieu of a record from which, together with certain undisputed allegations, the essential facts emerge. For convenience we set them forth chronologically.
(1) February 19, 1958: Plaintiffs agreed by written contract to purchase from Safeway Stores, Inc., the land in question. The property is situated in a business zone under the local zoning ordinance.
(2) March 18: One of the plaintiffs, Michael J. Crecca, applied for a building permit for the construction of a building to be used for conducting the business of bowling. Defendant Nucera refused to issue it. As of March 18, 1958 the bowling alley was not forbidden in a business zone under the ordinance.
(3) March 19: Plaintiffs requested and obtained an order to show cause, returnable March 28, why a judgment should not be entered requiring the permit to be issued.
(4) March 21: Deed executed and delivered to plaintiffs.
(5) March 22: The Board of Commissioners convened in a special session on Saturday afternoon to discuss amending the zoning ordinance in certain respects, including the prohibition of the proposed use.
(6) March 24: The Board of Commissioners introduced the amendatory ordinance on first reading. Parenthetically, we note that the ordinance as amended is not challenged *283 here, and we accept its validity. Although it is under attack in a separate proceeding instituted by the plaintiffs, we must presume for present purposes that the action of the municipality was a good-faith legislative act deemed for the best interests of the municipality from a zoning standpoint. Town of Belleville v. Kiernan, 39 N.J. Super. 480, 485 (App. Div. 1956).
(7) March 25: Nucera formally notified plaintiffs why he was refusing to issue the permit. Some of the reasons were technical deficiencies under the building code. He also mentioned the pendency of an ordinance which would prohibit the contemplated use.
(8) March 28: The trial judge orally granted what was in effect a summary judgment to plaintiffs. That judgment was stayed pending this appeal.
(9) April 7: An ordinance was adopted amending the zoning ordinance to prohibit bowling alleys, roller skating rinks, and similar uses in business zones.
(10) April 17: The amendatory ordinance became effective.
Defendant's appeal presents several grounds for reversal: the plaintiffs have not fully complied with certain technical requirements of the building code; the trial court erred in not granting a plenary hearing to resolve allegedly material facts; the building inspector had a duty to deny issuance of the permit pending adoption or rejection of the amendatory ordinance; the trial court abused its discretion in ordering issuance of the permit in view of the pendency of the amendment; and, notwithstanding all else, under the rule that the law in effect at the date of appellate decision governs, we must give effect to the present ordinance, as amended, prohibiting the bowling alley.
In view of our disposition, it becomes unnecessary for us to pass on most of these points. Accordingly, we proceed at once to resolve the basic question posed at the beginning of this opinion. As to this, we have had occasion to state the controlling principles in Roselle v. Moonachie, 48 N.J. Super. 17 (App. Div. 1957), and 49 N.J. Super. 35 (App. *284 Div. 1958). Under our decision there, it is clear that when a building inspector refuses a permit and a municipality very soon thereafter adopts a prohibitory zoning ordinance, the right to the permit may be defeated. It is of no moment that the evil sought to be met by the zoning ordinance has come to the attention of the governing body solely by reason of the instant application for a permit. Guaclides v. Borough of Englewood Cliffs, 11 N.J. Super. 405, 415 (App. Div. 1951).
This result also flows from the general rule that "the status of the law in respect to the validity of the use of property for a particular purpose is to be determined as of the time the court is called upon to act, rather than when the property owner applied for official permission to make the use." Roselle v. Moonachie, supra, 48 N.J. Super. at page 21. See also Westinghouse Electric Corp. v. United Electrical, Local 410, C.I.O., 139 N.J. Eq. 97, 106 (E. & A. 1946); Socony-Vacuum Oil Co. v. Mt. Holly Twp., 135 N.J.L. 112, 117 (Sup. Ct. 1947); Tice v. Borough of Woodcliff Lake, 12 N.J. Super. 20, 25 (App. Div. 1951); 8 McQuillin, Municipal Corporations (3d rev. ed. 1957), § 25.155, p. 356. Ordinarily, it is our reviewing function to inquire whether the judgment when rendered was erroneous or not. But if, before the decision of the appellate court, an amendment to an ordinance intervenes and positively changes it, it must be obeyed. We must decide according to the existing law. Indeed, Linwood Co. v. Gardner, 9 N.J. Misc. 139 (Sup. Ct. 1931), goes even further in holding that the applicant's rights are defeasible so long as a zoning ordinance is in the making at the time of appellate review.
Zoning is entrusted by legislation to municipalities, and while conditioned on adherence to statutory purposes and the considerations to be served by zoning, it must serve the common good and general welfare. Schmidt v. Board of Adjustment, Newark, 9 N.J. 405, 414 (1952). Were we now to affirm the judgment, the municipality would be required to sanction the use of these premises for a purpose which has already been deemed, presumably in good faith, *285 contrary to the general welfare. To do so would be contrary to Roselle v. Moonachie, 49 N.J. Super. 35, 42; Tice v. Borough of Woodcliff Lake, supra. Cf. Esso Standard Oil Co. v. North Bergen Twp., 50 N.J. Super. 90 (App. Div. 1958). While stability is undoubtedly essential in the field of zoning, nevertheless zoning does not operate in a vacuum. Changed or changing conditions call for changed plans, and owners of property in a particular zone or use district enjoy no indefeasibly vested right to that classification if the public interest demands otherwise. Saddle River Country Day School v. Saddle River, 51 N.J. Super. 589, 606 (App. Div. 1958); Rodgers v. Village of Tarrytown, 302 N.Y. 115, 96 N.E.2d 731 (1951).
Beyond these considerations, however, the philosophy to which we subscribed in the Moonachie decisions is so far contrary to plaintiffs' contentions that, even were we to affirm and to order issuance of the permit, plaintiffs' general position vis-a-vis the municipal authorities and the amendatory ordinance would not be significantly improved. We there said
"The predominant viewpoint goes to the extent of sanctioning the revocation of a permit for a use valid when issued, where a subsequent prohibitory regulation is adopted prior to reliance by the owner upon the permit by substantial investment or expenditure. * * *

* * * * * * * *
* * * Until the right reached fruition in an actual nonconforming use, it was not vested in the sense of being protected against the effect of new zoning legislation." (49 N.J. Super., at pages 40, 43.)
Thus, that plaintiffs may have obtained a judgment below or even an affirmance here entitling them to a permit would not preclude the municipal authorities from revoking it, absent substantial reliance in good faith thereon.
Plaintiffs contend that they had already "substantially relied" on the former zoning provisions of Lyndhurst by the time the amendment was adopted so as to have given them a vested right, not only entitling them to an irrevocable *286 permit but also immunizing them from the reach of the amendatory ordinance. The brief submitted on behalf of the plaintiffs made no reference to whether the plaintiffs had relied on the provisions of the ordinance in effect in agreeing to purchase the land. At the oral argument, we were of the opinion that the question of reliance was sufficiently in issue as to require determination. We suggested that both parties stipulate as part of the record the purchase price of the land and any other expenditures made by the plaintiffs relating to their acquisition of the land and to submit briefs on the point for our further consideration.
The requested stipulation and documents in support thereof disclose that on February 19, 1958 plaintiffs contracted to purchase the land in question for $60,000; that a deed dated March 21, 1958 was delivered pursuant to the contract of purchase; and that $389.43 was paid for a title policy. Plaintiffs also expended $200 for a survey and $1,250 for the architect's plans and specifications for the proposed building.
The narrow issue becomes whether "reliance" includes the actual purchase of property and monies expended in the acquisition thereof or whether it is limited to the actual commencement of excavation or construction. We are not concerned here with situations where a relied-upon permit is void in its issuance, in which event no amount of reliance has been held to preclude or estop the municipality from rescinding it. See Adler v. Department of Parks and Public Property, Irvington Twp., 20 N.J. Super. 240 (App. Div. 1952).
The substantial reliance contemplated by our decisions in Sun Oil Co. v. Clifton, 16 N.J. Super. 265 (App. Div. 1951), and Roselle v. Moonachie, supra, 49 N.J. Super., at p. 40, pertained to investments or expenditures in connection with the actual commencement of excavation or construction. And in 138 A.L.R. 500, 501 (1942), it is said:
"The mere facts that property has been purchased or leased with the intention to use it for a purpose allowable under the existing zoning regulations or that plans have been made and expenses incurred *287 in preliminary preparations for such use have been held not to prevent the application to it of a subsequent amendment prohibiting its use for such purpose."
See also 1 Rathkopf, Zoning and Planning (3d ed. 1956), ch. 57, p. 920; Rhyne, Municipal Law, § 32-25, p. 892 et seq. (1957); Rice v. Van Vranken, 132 Misc. 82, 229 N.Y.S. 32, 35, affirmed 225 App. Div. 179, 232 N.Y.S. 506 (App. Div. 1929), affirmed 255 N.Y. 541, 175 N.E. 304 (Ct. App. 1930). Cf. 8 McQuillin, Municipal Corporations (3d rev. ed. 1957), § 25.157, p. 360; Marblehead Land Co. v. Los Angeles, 36 F.2d 242 (D.C.S.D. Cal. 1929), affirmed 47 F.2d 528 (9 Cir. 1931), cert. denied 284 U.S. 634, 52 S.Ct. 18, 76 L.Ed. 540 (1931). We hold that reliance is not constituted by the change of position brought about by merely entering into a contract to purchase with the intention to make the use later prohibited. Nor do we regard the incurrence of the miscellaneous expenses for title policy, surveyors' and architects' plans as constituting substantial reliance, under all the circumstances of the case.
In so holding, we are mindful that each case "requires a balancing of individual against public rights and equities." Roselle v. Moonachie, supra, 49 N.J. Super. at p. 42. Had plaintiffs purchased the premises from Safeway solely with an eye to erecting a bowling alley, plaintiffs should have protected themselves by stipulating in the contract that the purchase was conditioned on their success in securing a building permit for the proposed venture. But of more importance, there is nothing before us to indicate that $60,000 was in excess of the fair market value or that plaintiffs will encounter any difficulty in recapturing the purchase price  indeed, nothing to indicate that the premises are ill-suited for other business uses compatible with the amendment. Esso Standard Oil Co. v. North Bergen Twp., supra, 50 N.J. Super. at page 95.
In view of our determination, we find it unnecessary to pass upon the point argued by defendant that plaintiffs never *288 fully qualified with the requirements of the building code and zoning ordinance for the permit sought.
Reversed with directions to discharge the order compelling defendant to issue a building permit and to dismiss the complaint.